STATE ex. rel. Paula A. FLOWERS

v.

TENNESSEE TRUCKING ASSO-
CIATION SELF INSURANCE
GROUP TRUST, et al.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Sept. 14, 2005 Session.

April 18, 2006.

Rehearing Denied May 8, 2006.

Permission to Appeal Denied by
Supreme Court Oct. 30, 2006.

Petition to Rehear Denied
Dec. 11, 2006.

Roland M. Lowell and Mary B. Langford, Nashville, Tennessee, for the appellants, Ocoee River Transport, Western Express, Inc., and DCI Transportation, LLC.

Renard A. Hirsch, Sr. and William H. Stover, Nashville, Tennessee, for the appellee, Paula M. Flowers, Commissioner of Commerce and Insurance for the State of Tennessee and Liquidator, Mark E. Jaquish, Special Deputy Liquidator and Joseph P. Keane, Special Deputy Liquidator.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Three members of a workers' compensation self-insured group trust in liquidation appeal from two orders of the trial court. They contend the trial court erroneously held each of them in contempt and imposed sanctions due to their failure to make periodic payments of assessments as ordered by the court. One of the appellants additionally contends the trial court erred by assessing the Liquidator's administrative fees without affording it the opportunity to conduct discovery as to the reasonableness and necessity of the fees. We affirm the finding of contempt and the imposition of sanctions for the period the appellants are in contempt. As for the administrative fees, the burden of proof of the reasonableness and necessity of the administrative fees is on the Liquidator, and those opposing the fees should be afforded the opportunity to conduct appropriate discovery. If the Liquidator contends certain records are subject to protection, the trial court must conduct an *in camera* inspection to determine the propriety of a protective order. Such an inspection and determination not having occurred, we remand the issue of administrative fees for further proceedings.

This appeal arises out of the liquidation of a workers' compensation self-insured group trust, the Tennessee Trucking Association Self Insurance Group Trust. The Trust was ordered into liquidation in 2004 pursuant to the Insurers Rehabilitation and Liquidation Act, Tenn.Code Ann. § 56-9-306 *et seq.*

The order of liquidation followed the filing of a petition for liquidation by the Commissioner of the Tennessee Department of Commerce and Insurance. The Commissioner established to the satisfaction of the trial court that the Trust had a deficit of $2,834,287.00 for the 2002 fund year, grounds for liquidation existed, and efforts to cure the deficiencies of the Trust had proven unsuccessful.[1] The trial court appointed the Commissioner as the Liquidator. With the approval of the court, the Commissioner appointed two Special Deputy Liquidators who were to administer the business operations of the Trust and assess the members to fund the Trust in order to fulfill its financial obligations.[2]

The Deputy Liquidators conducted a thorough financial examination of the Trust and assessed the fifty members of the Trust to fund the deficit and the ongoing operational expenses of the Trust. Not unexpectedly, members of the Trust objected to their respective assessments. As a consequence, the trial court conducted a hearing after which it issued an order requiring the members to pay the undisputed portion of the assessment by June 1,

---

1. Appellants did not oppose liquidation.

2. Appellants did not oppose the Commissioner's appointment as the Liquidator or the appointment of the Special Deputy Liquidators.

2004.[3] The order set forth the respective financial obligations of each member and the dates for the periodic payments. No appeal was taken from that order. Thereafter, several members failed to pay the assessment as ordered by the court. Ocoee River Transport, Western Express, Inc., and DCI Transportation, LLC (Appellants) were among those members who failed to remit their respective payments when due.

Thereafter, the Liquidator filed a petition to hold the Appellants, among others, in contempt. Appellants filed responses to the contempt petition. Appellants did not contest the assessments. Instead, each requested the court permit them to remit their respective obligations, the arrearage each owed, pursuant to a payment plan. Ocoee and Western proposed a specific payment plan.[4] DCI requested a payment plan but did not submit a specific plan. The trial court approved the plan submitted by Ocoee and Western and approved DCI's request for a payment plan. Orders were timely entered establishing a payment plan for all three of the Appellants.[5] None of the Appellants objected to the orders, and no appeals were taken.

Although Appellants requested the payment plans and did not oppose the plan ordered by the court, all three Appellants failed to pay in accordance with the payment plan. The court was notified of the Appellants' non-compliance, following which an order was entered scheduling a contempt hearing for October 28, 2004. The order specifically provided notice that sanctions would be imposed upon any members failing to comply with the court-ordered payment plans. Each Appellant received a copy of the order.[6]

Counsel for Appellants attended the contempt hearing on October 28. At the conclusion of the hearing, the trial court entered a judgment against each Appellant for the sums then owing. The court also held each Appellant in contempt for willfully failing to comply with the court-ordered payment plan. In addition to holding each of them in contempt, the trial court entered an order that put the contemptuous members on notice that if they failed to remit the sums owing by December 31, 2004, the court would permit claimants holding a workers' compensation claim against them to elect to either proceed with their claims in the liquidation proceeding or to proceed against the contemptuous member at law as provided in Tenn.Code Ann. § 50–6–406.

Independent of the contempt proceedings, the Liquidator filed a motion to recover its administrative fees to date. In addition thereto, the Liquidator filed a motion seeking a protective order, requesting permission to submit under seal detailed descriptions and invoices of administrative services and related fees incurred in the liquidation proceedings.

3. Part of the assessment imposed by the Liquidator was undisputed and part of it was disputed. The trial court required the members to pay the portion of the assessment that was undisputed. The trial court did not require the members to pay the portion that was disputed, reserving that issue for another hearing.

4. The parties were to pay in three increments. The first amount was due within one week of the August 2004 hearing, the next payment was due by October 1, 2004 and the final payment was to be made by November 1, 2004.

5. DCI was ordered to pay $11,000.00 within one week of the August 26, 2004 hearing, half of the balance by October 1, 2004 and the remainder by November 1, 2004.

6. A subsequent notice was served upon the parties alleged to be in contempt, however, that notice was handed out at the October 28, 2004 hearing.

Western is the only member of the Trust that objected to the motion for a protective order. Western requested full disclosure of the detailed records and time sheets supporting the fee request, contending it was entitled to thoroughly examine the records if it was liable for a portion of the fees. The Liquidator countered, suggesting the trial court's review of the reasonableness and necessity of the details of the time expended, services rendered, and fees charged would suffice as the court had the duty to approve the fees, not the members. After hearing from both sides, the trial court authorized the filing of the detailed descriptions and invoices of administrative services and related fees under seal, and required the Liquidator to provide a narrative summary of the services and fees to Western for its review, in lieu of a detailed description and records. After reviewing the narrative summary, Western complained to the trial court that it was inadequate because it merely provided generalities, there was no itemization of the services performed, and the time expended was not delineated. The trial court denied Western's requests for additional details. On appeal, Western contends it is entitled to contest the reasonableness of the administrative services and fees, and to do that it must be afforded an opportunity to examine the records.

### STANDARD OF REVIEW

On appeal, the trial court's findings of fact are reviewed de novo, with a presumption that the findings are correct unless the evidence preponderates otherwise. Tenn. R.App. P. 13(d). Questions of law are reviewed de novo, with no such presumption of correctness. *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn.Ct.App.1996). ■ We review a trial court's finding of contempt under the abuse of discretion standard. *Hawk v. Hawk*, 855 S.W.2d 573,

583 (Tenn.1993). Pursuant to this standard of review, we will set aside a discretionary decision only when the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 695 (Tenn.Ct.App.1999); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222 (Tenn.Ct.App.1999). The trial court's discretionary decision will be reviewed to determine: (1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives. *BIF, Inc. v. Service Constr. Co., Inc.*, (no appeal number given) 1988 WL 72409, at *3 (Tenn.Ct.App. July 13, 1988). The abuse of discretion standard does not permit us to substitute our judgment for that of the trial court. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn.2001) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn.1998)).

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining."

*Eldridge v. Eldridge*, 42 S.W.3d at 85 (citations omitted). An abuse of discretion is found when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record. *See, e.g., State ex. rel Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn.Ct.App.2000).

## CONTEMPT

All courts are empowered to punish for contempt. Tenn.Code Ann. § 16–1–103. This power, however, is limited to conduct delineated by the statute. Tenn. Code Ann. § 29–9–102 (2000); *see also Black v. Blount,* 938 S.W.2d 394, 397 (Tenn.1996). Determining whether its order has been followed is uniquely within the trial court's discretion. *Sherrod v. Wix,* 849 S.W.2d 780, 786 (Tenn.Ct.App. 1992).

## I.

Ocoee and Western contend they were deprived of due process because they did not receive notice they were subject to being held in contempt at the October hearing. We find this issue without merit because the attendance and participation of counsel for Ocoee and Western at the contempt hearing belie the protestation they did not have notice. Moreover, the notice of the contempt hearing, which Ocoee and Western received weeks in advance of the hearing, specifically advised that all members who were delinquent in their payments as of October 28, 2004 would be the subject of the contempt hearing and were subject to sanctions.[7]

As we explain more thoroughly below, Appellants were sanctioned for being in civil contempt, not criminal contempt. Civil contempt only requires that the contemnor be notified of the allegation and be given the opportunity to respond. *Black,* 938 S.W.2d at 398 (citing *State v. Maddux,* 571 S.W.2d, 819, 821 (Tenn. 1978)); *see also Pickern v. Pickern,* No. E2004–02038–COA–R3–CV, 2005 WL 711964, at *7 (Tenn.Ct.App. Mar.29, 2005). Moreover, and significant to this issue, the safeguards afforded to one accused of criminal contempt are not available to one accused of civil contempt.[8] *See Overnite Transp. Co. v. Teamsters Local Union No. 480,* 172 S.W.3d 507, 510 (Tenn.2005).

Considering the foregoing, it is disingenuous for Ocoee and Western to contend they were not properly notified they were subject to being held in contempt on October 28 because they were aware of the scheduling of the contempt hearing, they were fully aware they had not remitted the required payments as of the date certain specified in the court's order, and they were aware that members were to be held in contempt and have sanctions imposed against them if they failed to comply with

---

7. Western and Ocoee do not deny receiving all of the prior orders, motions and notices concerning the August and October contempt hearings. In fact, Western and Ocoee responded to the petition and show cause notices preceding the August hearing and attended the show cause hearing in August. Moreover, at the August hearing they requested and proposed payment plans, which were approved by the trial court. In the order issued by the trial court approving the payment plan, the trial court specifically ordered the Liquidators to notify the trial court if they failed to pay under the payment plan. Western and Ocoee did, in fact, fail to comply with the respective payment plans. The scheduling order, entered September 15, 2004, notified all members, including Western and Ocoee, a contempt hearing was to be held on October 28. Western and Ocoee were listed

on the certificate of service, they admit receiving the notices, and they were represented by counsel at the October 28 contempt hearing.

8. One alleged to have committed acts of criminal contempt, other than those acts committed in the court's presence, must be given both notice of the alleged contempt and a hearing. Tenn. R.Crim. P. 42. If a defendant is charged with criminal contempt, guilt must be established by proof beyond a reasonable doubt. *Black v. Blount,* 938 S.W.2d 394, 397(Tenn.1996). Criminal contempt cases are subject to the double jeopardy provisions in the federal and state constitutions. *See Ahern v. Ahern,* 15 S.W.3d 73, 80–82 (Tenn. 2000); *State v. Wood,* 91 S.W.3d 769, 773 (Tenn.Ct.App.2002).

the prior order. Accordingly, we find this issue without merit.

## II.

■ Ocoee and DCI contend the proof was inadequate to sustain a finding of contempt because it failed to establish their actions were willful. Specifically, they contend there was no evidence of their ability to pay the assessment as ordered by the court.[9]

■ An act of contempt is a willful or intentional act that hinders, delays, or obstructs the court's administration of justice. *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn.2000); *Winfree v. State*, 175 Tenn. 427, 135 S.W.2d 454, 455 (1940). In order to find a party in civil contempt of an order, the trial court must make a threshold finding that the party violating the order engaged in willful conduct. *Ahern*, 15 S.W.3d at 79; *Haynes v. Haynes*, 904 S.W.2d 118, 120 (Tenn.Ct.App.1995). "Willfulness" in the context of civil contempt does not require the same standard of culpability required by the penal code. *United Color Lab & Digital Imaging, Inc. v. United Studios*, No. W2005–00133–COA–R3–CV, 2006 WL 694645, at *4 (Tenn.Ct.App. Jan.18, 2006) (citing *G.T. v. Adoption of A.E.T.*, 725 So.2d 404, 409 (Fla.Dist.Ct.App.1999)). Nor does it require malevolence or ill will. *In re Adoption of a Minor*, 343 Mass. 292, 178 N.E.2d 264, 267 (1961). Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. *United Studios*, 2006 WL 694645, at *4 (citing *In re Mazzeo*, 131 F.3d 295, 299 (2d Cir.1997); *United States v. Phillips*, 19 F.3d 1565, 1576 (11th Cir. 1994)). Conduct is "willful" if it is the product of free will rather than coercion. *United Studios*, 2006 WL 694645 at *4. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing. *Id.*

■ Although the party to be held in civil contempt must have the ability to perform the act it is ordered to perform, *Leonard v. Leonard*, 207 Tenn. 609, 341 S.W.2d 740, 743 (1971), the burden of proof is on the contemnor to show the inability to pay. *Pirrie v. Pirrie*, 831 S.W.2d 296, 298 (Tenn.Ct.App.1992); *Leonard*, 341 S.W.2d at 743–44; *Gossett v. Gossett*, 34 Tenn.App. 654, 241 S.W.2d 934, 936 (1951). Ocoee and DCI proposed and gained approval from the court for a payment plan. This proposed plan by Ocoee and DCI constituted a representation to the trial court of their financial ability to comply with the payment plan. More significantly, Ocoee and Western never asserted an inability to comply with the payment plan; their only protestation was they could not remit a large sum at once.[10] Their defense to the contempt notice was not an inability to comply with the payment plan; instead, they contended, without satisfactory evidence to support the contention, that they did not have the ability to pay a large sum "all at once." Accordingly, we find this issue without merit.

---

9. Appellants also challenge the trial court's finding of willful contempt on the grounds that the Appellants have defenses that the Liquidator did not consider. We find this argument without merit because their counsel attended the contempt hearing and did not attempt to offer a defense until the court had ruled adverse to Ocoee and DCI.

10. Ocoee's response to the contempt petition and petition to show cause stated "Ocoee is a small carrier and not in a position to be able to pay a huge assessment all at once." Likewise, DCI's response was "DCI is a very small carrier and is unable to pay a large assessment in a lump sum. DCI lost money in 2003 and does not have cash reserves to pay a large assessment at one time."

## III.

All three Appellants argue the trial court erroneously imposed sanctions, which they contend were punishment for criminal contempt. Appellants are mistaken on both counts.

 The power of courts to punish a party for contempt is delineated in Tenn. Code Ann. § 29–9–102. The power to inflict punishments for contempt of court extends to the willful disobedience or resistance of any party to any lawful order, decree or command of the court. Tenn. Code Ann. § 29–9–102(3). Contempt may be either criminal or civil. Criminal contempt is used to "preserve the power and vindicate the dignity and authority of the law" as well as to preserve the court "as an organ of society." *Black*, 938 S.W.2d at 398 ; *see also State ex rel. Anderson v. Daugherty*, 137 Tenn. 125, 191 S.W. 974 (1917). Generally, sanctions for criminal contempt are designed to punish the contemnor and are unconditional in nature. *Black*, 938 S.W.2d at 398. It is issued as punishment and is unconditional. *Ahern*, 15 S.W.3d at 79.

 Civil contempt, however, occurs when a person refuses or fails to comply with a court order and a contempt action is brought to enforce private rights. *Black*, 938 S.W.2d at 398 (citing *Robinson v. Air Draulics Engineering Co.*, 214 Tenn. 30, 377 S.W.2d 908, 911 (1964)). Civil contempt sanctions are remedial and coercive in character, designed to compel a party to comply with the court's order. *Daugherty*, 191 S.W. at 974; *see also State v. Turner*, 914 S.W.2d 951, 955 (Tenn. Crim.App.1995).[11] Unlike criminal contempt, the contemnor can purge the contempt by complying with the court's order. *Ahern*, 15 S.W.3d at 79; *see also Doe v.*

*Board of Prof'l Responsibility*, 104 S.W.3d 465, 473 (Tenn.2003) (holding civil contempt, unlike criminal contempt, is designed to coerce an individual to comply with a court's order).

Appellants could learn a great deal regarding the differences between criminal contempt and civil contempt by reading *Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507 (Tenn. 2005). In that matter, Overnite, a trucking firm, initiated civil contempt proceedings against the defendants, members of a trade union. Overnite contended the defendants willfully disobeyed the trial court's orders regulating the conduct of the parties during the strike. The Supreme Court explained that a party

> may violate a court's order by either refusing to perform an act mandated by the order or performing an act forbidden by the order. If the contemnor has refused to perform an act mandated by the court's order and the contemnor has the ability to comply with the order at the time of the contempt hearing, the court may fine or imprison the contemnor until the act is performed. Tenn. Code Ann. § 29–9–104 (1980 & 2000); *see Ahern*, 15 S.W.3d at 79. Thus, the contemnor possesses the "keys to the jail" and can purge the contempt through compliance with the court's order. *Id.*

*Overnite Transp. Co.*, 172 S.W.3d at 510–511.

 After a finding of contempt, courts have several remedies available depending upon the facts of the case. *Bailey v. Crum*, 183 S.W.3d 383, 387 (Tenn.Ct. App.2005). A court can imprison an individual to compel performance of a court order. *Id.* This remedy is available when

---

11. A party may be held in civil contempt for the "willful disobedience … to any lawful …

order, rule, decree, or command" of the court. *Black*, 938 S.W.2d at 398.

the individual has the ability to comply with the order at the time of the contempt hearing. *Id.* (citing Tenn.Code Ann. § 29–9–104). This type of sanction for civil contempt is available without the procedural safeguards afforded to one accused of criminal contempt because the one in contempt has the "keys to the jail" and can purge the contempt by complying with the court's order. See *Overnite Transp. Co.*, 172 S.W.3d at 510; see also *Bailey*, 183 S.W.3d at 387 (citing Tenn.Code Ann. § 29–9–104).

The trial court entered an order putting Appellants, along with all members of the Trust, on notice that if they failed to remit the sums owing by December 31, 2004, the court would permit claimants holding a workers' compensation claim against them to elect to either proceed with their claims in the liquidation proceeding or to proceed against the contemptuous member at law as provided in Tenn. Code Ann. § 50–6–406. The essence of this order was clearly to cause Appellants to cease their willful disobedience and to comply with the orders of the court, with which Appellants had repeatedly failed or refused to comply. This type of sanction is a civil contempt sanction, because it is remedial and coercive in character, designed to compel Appellants to comply with the trial court's order. Accordingly, we find no error with the sanctions imposed provided they are lifted once Appellants cease their willful disobedience of the trial court's orders.

## IV.

All three Appellants contend the trial court erroneously held them in contempt for failing to obey an order that is on appeal. The facts however do not support this argument.

Appellants previously perfected an appeal of an order entered on July 12, 2004 that approved the assessment methodology employed by the Liquidator.[12] The order that is the subject of the previous appeal, entered on July 12, 2004, does not pertain to Appellants' payment plans at issue in this appeal. The order imposing sanctions for Appellants' willful disobedience pertained to Appellants' failure to comply with a different order, an order entered on May 3, 2004, from which Appellants did not appeal.

We find it more than ironic that Appellants were found in contempt for failing to comply with the May 3, 2004 order and the August 2004 orders; the latter orders, the payment plans, having been requested by Appellants. Nevertheless, whether an order was requested or imposed against Appellants' will is of no consequence; Appellants were obligated to remit the assessment pursuant to the May 2004 order and the August 2004 orders. Appellants were held in contempt for their willful disobedience of orders which were not the subject of appeal. Accordingly, we find no error with the trial court holding Appellants in contempt and imposing sanctions against Appellants for their repeated and persistent disobedience.

## ADMINISTRATION FEES

Western appeals the approval of the Liquidator's administration fees. Western contends the trial court erred by granting a protective order placing the administrative fee invoices under seal, which deprived it of the opportunity to conduct discovery in order to contest the reasonableness of the fees.

---

12. The two appeals were not consolidated, and the opinions were filed separately. The other appeal to which Appellants make reference is docketed under No.: M2004–01980–COA–R3–CV.

The Liquidator filed a motion with the trial court requesting that the administrative fee invoices be placed under seal. The Liquidator's request was granted although the Liquidator provided little information to justify the issuance of the protective order. The motion for the protective order merely stated, "in order to preserve privileges, including, but not limited to, attorney-client and work product privileges, and to avoid any appearance of waiver of such privileges, the Liquidator asks that this court issue an order allowing the Liquidator: . . ." to place the records under seal. Moreover, the record affords this court little insight into the trial court's reasons for granting the protective order, other than the burden placed on the Liquidator in separating privileged or work product information from discoverable information.

■■■ A party seeking discovery is entitled to obtain information about any matter, not privileged, which is relevant to the subject matter involved, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. Tenn. R. Civ. P. 26.02(1); *Reid v. State*, 9 S.W.3d 788, 792 (Tenn.Ct. App.1999). The relevancy requirement is broadly construed to include any matter that bears on, or that reasonably could lead to other matters that could bear on any of the case's issues. *Price v. Mercury Supply Co.*, 682 S.W.2d 924, 935 (Tenn.Ct. App.1984).

Of course, the ability to obtain relevant information presumes a proper inquiry. Discovery requests require some tailoring. If parties go too far, the courts may whittle down their discovery requests when the discovery sought "is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the impor-

tance of the issues at stake in the litigation." Tenn. R. Civ. P. 26.02(1); *Reid v. State*, 9 S.W.3d at 793. Parties who desire relief from improper or overburdensome discovery are expected to request a protective order under Tenn. R. Civ. P. 26.03.

. . . .

The courts understand that "there is a far greater cost in complying with a discovery request than in making the discovery request. As a result there [can be] a strong temptation to inflict harm on one's adversary by seeking additional information for which the adversary will have to incur the cost." *Samuel Issacharoff & George Loewenstein, Unintended Consequences of Mandatory Disclosure*, 73 Tex. L.Rev. 753, 755 n. 8 (1995). Accordingly, the courts can and should actively discourage overburdensome discovery. . . .

*Kuehne & Nagel, Inc. v. Preston, Skahan & Smith Intern., Inc.*, No. M1998–00983–COA–R3–CV, 2002 WL 1389615, at *3 (Tenn.Ct.App. June 27, 2002).

■■■ The rules favor discovery. Thus, the party opposing discovery must demonstrate with more than conclusory statements and generalizations that the discovery limitations being sought are necessary to protect it from, among other things, oppression or undue burden or expense. "A trial court should balance the competing interests and hardships involved when asked to limit discovery and should consider whether less burdensome means for acquiring the requested information are available." *Duncan v. Duncan*, 789 S.W.2d 557, 561 (Tenn.Ct.App. 1990).

■■■ The attorney-client privilege is frequently used as a basis for a protective order. It encourages full and frank communication between attorney and client by

sheltering these communications from disclosure. Tenn.Code Ann. § 23–3–105; *Federal Ins. Co. v. Arthur Anderson & Co.*, 816 S.W.2d 328, 330 (Tenn.1991). The attorney-client privilege, however, is not absolute and it does not protect all communications between an attorney and a client.[13] *Bryan v. State*, 848 S.W.2d 72, 80 (Tenn.Crim.App.1992). The communication must involve the subject matter of the representation and must be made with the intention that the communication will be kept confidential.[14] *Id.*

"In most cases a privilege protects an individual, who alone possesses the facts needed to support the existence of the privilege. Accordingly, it is generally held that the party asserting a privilege has the burden of proving that the privilege is applicable." NEIL P. COHEN, ET AL., TENNESSEE LAW OF EVIDENCE § 5.01[4](d) (5th ed.2005); *see In re Columbia/ HCA Healthcare Corp.*, 192 F.R.D. 575, 577 (M.D.Tenn.2000); *Bryan*, 848 S.W.2d at 80 (holding the party asserting attorney-client privilege has the burden of establishing its existence). To successfully invoke the attorney-client privilege, the party asserting the privilege is obligated to establish the communications were made pursuant to the attorney-client relationship and with the intention that the communications remain confidential. *Bryan*, 848 S.W.2d at 80; *see also Smith County Educ. Ass'n v. Anderson*, 676 S.W.2d 328, 333 (Tenn. 1984).

The work product doctrine is also frequently used to justify a protective order. Tennessee's work product doctrine is codified in Tenn. R. Civ. P. 26.02(3). The doctrine, which is not a privilege, permits an attorney "to assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *In re Columbia/HCA Healthcare Corp. Billing Practices*, 293 F.3d 289, 294 (6th Cir.Tenn. 2002). The policy underlying the work product doctrine is that attorneys preparing for litigation should be permitted to assemble information, to separate the relevant facts from the irrelevant, and to use the relevant facts to plan and prepare

---

13. "Since a privilege keeps relevant information from the trier of fact, courts typically hold that a privilege is to be strictly construed. COHEN, TENNESSEE LAW OF EVIDENCE § 5.01[4](e) (citing *In re Southern Indus. Banking Corp.*, 35 B.R. 643, 647 (Bankr. E.D.Tenn.1983))."

14. In *Bryan v. State*, the Court of Criminal Appeals recognized that the attorney-client privilege "is not absolute nor does it encompass all communications between the client and the attorney." *Bryan v. State*, 848 S.W.2d 72, 80 (Tenn.Crim.App.1992). The court further recognized that the privilege applies only to communications made pursuant to the attorney-client relationship and with the intention that the communications remain confidential. *Id.* Moreover, even when the privilege applies, it may be waived. For example, when the client testifies about alleged communications with his attorney, the privilege is waived as to the reported communication and the attorney may testify as to its contents. *Id.* (citing *Cooper v. United States*, 5 F.2d 824 (6th Cir.1925)). Further, confidentiality is destroyed when those communications take place in the presence of a third party. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 218–19 (citing *Hazlett v. Bryant*, 192 Tenn. 251, 241 S.W.2d 121, 123 (1951)). The party asserting the privilege or doctrine also has to demonstrate it has not waived its protection with regard to the documents being sought. *Boyd*, 88 S.W.3d at 221 (citing *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 289 (D.Mass.2000)). The Liquidator was not required to spell out (1) the names and positions of the authors of the documents, (2) their responsibility in connection with the litigation, (3) the dates the documents were prepared, or (4) to whom the documents have been disclosed. *Boyd*, 88 S.W.3d at 221 (citing *Toledo Edison Co. v. G A Techs., Inc.*, 847 F.2d at 341).

their strategy without undue and needless interference. *Swift v. Campbell*, 159 S.W.3d 565, 572 (Tenn.Ct.App.2004) (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 218–19 (Tenn.Ct.App.2002)). The work product doctrine extends beyond confidential communications between the attorney and client to any document prepared in anticipation of litigation by or for the attorney. *Swift*, 159 S.W.3d at 572. Like the attorney-client privilege, the burden of proof is on the party asserting the work product doctrine to establish that the writings or documents were prepared in anticipation of litigation. *Guardsmark, Inc. v. Blue Cross and Blue Shield of Tennessee*, 206 F.R.D. 202, 207 (W.D.Tenn. 2002).

The standards and procedures for addressing this type of a discovery dispute are found in Tenn. R. Civ. P. 26.02(3). To resolve issues pertaining to the discovery of an adversary's claim of work product or privilege, the trial court and the parties are to follow sequential steps, which entail shifting burdens of proof. *Boyd*, 88 S.W.3d at 220–222 (citing *Hendrick v. Avis Rent A Car Sys.*, 916 F.Supp. 256, 260 n. 3 (W.D.N.Y.1996); *In re Air Crash Disaster at Detroit Metro. Airport*, 130 F.R.D. 641, 644 (E.D.Mich.1989)).

 The party seeking discovery, has the burden to establish (1) that the material being sought is relevant to the subject matter involved in the pending action, (2) that the material being sought is not otherwise privileged, and (3) that the material being sought consists of documents or other tangible things. *Boyd*, 88 S.W.3d at 220 (citing *Toledo Edison Co. v. G A Techs., Inc.*, 847 F.2d at 339; *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D.Mich.2000); *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 387 (W.D.Tenn.1999)).[15] Once the party seeking discovery establishes a prima facie showing that the materials it sought were discoverable, the burden shifts to the party opposing discovery to show that the materials were either privileged or work product protected by Tenn. R. Civ. P. 26.02(3). *Boyd*, 88 S.W.3d at 220–221 (citing *Hammock v. Sumner County*, No. 01A01–9710–CV–00600, 1997 WL 749461, at *2 (Tenn. Ct.App. Dec.5, 1997)).

 If it is established that a portion of the requested documents are subject to the attorney-client privilege, a protective order as to those documents is in

---

**15.** To obtain work product, the requesting party must establish (1) that it has a substantial need for the materials and (2) that it is unable to obtain these materials or their substantial equivalent by other means without undue hardship. Tenn. R. Civ. P. 26.02(3); *see also Boyd*, 88 S.W.3d at 221 (citing *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir.1997); *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir.1994); *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 387 (W.D.Tenn.1999); *Beard v. Middle Tenn. Home Health Serv.*, 144 F.R.D. 340, 342 (E.D.Tenn.1992)). "The basis for the claim of 'substantial need' must be articulated with specificity." *Boyd*, 88 S.W.3d at 221 (citing *In re Grand Jury Investigation*, 599 F.2d 1224, 1232 (3d Cir.1979); *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 689–90 (E.D.Pa.1986); EDNA S. EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE 550 (4th ed.2001)). To successfully invoke qualified protection afforded by the work product doctrine, the party must establish (1) that the materials sought are documents or tangible things, (2) that the documents were prepared in anticipation of litigation or for trial, and (3) that the documents were prepared by or for another party or by or for that other party's representative. Tenn. R. Civ. P. 26.02(3); *see also Boyd*, 88 S.W.3d at 221 (citing *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613 (N.D.Ill.2000); *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 542 (N.D.W.Va.2000); 4 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.70[5] (2nd ed.1996)).

order. Tenn.Code Ann. § 23–3–105. If it is established that a portion of the requested documents are work product, the burden shifts back to the party requesting discovery to establish that it is nonetheless entitled to the material. *Boyd,* 88 S.W.3d at 221 (citing EDNA S. EPSTEIN, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE 492 (4th ed.2001)).[16]

■ The burden was on the Liquidator, as the party opposing discovery, to demonstrate with more than conclusory statements and generalizations that the discovery limitations being sought are necessary to protect it from undue burden or expense and the trial court "should decline to limit discovery if the party seeking the limitations cannot produce specific facts to support its request." *Duncan,* 789 S.W.2d at 561. Moreover, the trial court "should balance the competing interests and hardships involved when asked to limit discovery and should consider whether less burdensome means for acquiring the requested information are available." *Id.* (citing *Marrese v. American Academy of Orthopaedic Surgeons,* 706 F.2d 1488, 1493 (7th Cir.1983); *Newsom v. Breon Laboratories, Inc.,* 709 S.W.2d 559, 560 (Tenn.1986)).

■ The record reveals the Liquidator provided little justification for the protective order, and the procedures to determine whether the requested documents were subject to the attorney-client privilege or work product doctrine were not followed. The only justification for the issuance of the protective order in the record is the Liquidator's conclusory statement that privileged information and work product are among the requested documents and that it would be unduly burdensome to identify and/or separate them from documents that are discoverable. The Liquidator's mere conclusory statements, without more, are inadequate to justify a protective order that precludes Western from reviewing any of the documents that support the administrative fees requested by the Liquidator. Moreover, the Liquidator's conclusory statements, without more, are also inadequate to justify a finding that it would be unduly burdensome to identify and separate privileged and work product documents, or to employ other less restrictive alternatives to a blanket protective order concerning all administrative fee documents.

We, therefore, find it necessary to vacate the trial court's order placing all of the administrative fee documents under seal and the order awarding the Liquidator's administrative fees. All issues pertaining to the Liquidator's administrative fee are remanded for further proceedings. These issues include determining the extent or identity of documents that are subject to a privilege or the work product doctrine, determining whether relevant documents not subject to a privilege or the work product doctrine can be separated without undue burden or expense, and/or whether other alternatives not unduly bur-

**16.** The nature and extent of the burden depends upon whether the material is "ordinary" or "fact" work product or "opinion" work product. Ordinary or fact work product consists of documents prepared in anticipation of litigation or for trial that do not contain the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party in the litigation. *Boyd,* 88 S.W.3d at 221 (citing *Pacamor Bearings, Inc. v. Minebea Co.,* 918 F.Supp. 491, 512 (D.N.H.1996); MOORE'S FEDERAL PRACTICE § 26.70[5][b])). Opinion work product includes documents containing an attorney's mental impressions, conclusions, opinions, or legal theories regarding the pending litigation. *Boyd,* 88 S.W.3d at 222 (citing *Pittman v. Frazer,* 129 F.3d 983, 988 (8th Cir.1997); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 87(2)).

densome are available other than narrative summaries.

We recognize the protocol required by this remand will result in additional administrative fees and expenses, the extent of which will depend upon the procedures employed by the trial court and the zealous advocacy of Western and the Liquidator. Whether to levy some or all of the additional fees and expenses incurred as a result of this remand by the Liquidator against Western alone, or among the Appellants and/or all members of the Trust, jointly and severally, is left to the sound discretion of the trial court.

CONCLUSION

We affirm the trial court in all respects as it pertains to the contempt orders. As for the administrative fees and discovery dispute, we remand for further proceedings consistent with this opinion. Costs of appeal are assessed against Appellants, Ocoee River Transport, Western Express, Inc., and DCI Transportation, LLC, jointly and severally.