IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 7, 2017 Session

## KATHLEEN J. SCOBEY v. TODD B. SCOBEY

**Appeal from the Chancery Court for Williamson County**
**No. 41312      Michael W. Binkley, Judge**

_____

### No. M2016-00963-COA-R3-CV

_____

In this post-divorce action, Wife filed a Petition for Civil Contempt and Other Relief, including a request to recover her attorney's fees, alleging Husband violated five provisions in the marital dissolution agreement (MDA). Husband denied the allegations and filed a separate petition to decrease his child support obligation, which Wife opposed. Before trial, but after protracted proceedings, Husband complied with three provisions in the MDA, leaving two to be decided by the court. Following an evidentiary hearing, the court found Husband in civil contempt for violating the remaining MDA provisions, denied Husband's petition to decrease child support, and ordered Husband to pay Wife's attorney's fees. Specifically, the court found that Husband violated the MDA by refusing to transfer to Wife one-half of the "non-retirement" account at T. Rowe Price and by concealing and withholding two paychecks he earned during the marriage that the parties agreed to divide equally. The trial court found that Husband did not offer sufficient proof of his current income to support a reduction in his child support obligation. The trial court also determined that Wife was entitled to recover her attorney's fees pursuant to the enforcement provision in the MDA and pursuant to Tenn. Code Ann. § 36-5-103(c) as the attorney's fees pertained to the child support decree. Husband appealed. We have determined that the MDA provision concerning the "non-retirement" account was not sufficiently clear, specific, and unambiguous to sustain a finding of contempt; therefore, we reverse this finding of contempt. However, we affirm the finding of contempt for concealing and withholding two paychecks. We also affirm the trial court in all other respects, including the award of attorney's fees incurred by Wife in the trial court and the denial of Husband's petition to reduce child support. As for Wife's request to recover the attorney's fees she incurred in this appeal, we find she is entitled to recover her fees and remand this issue for the trial court to determine the amount she is entitled to recover.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed
in Part and Affirmed in Part**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

G. Kline Preston, IV, Nashville, Tennessee, for the appellant, Todd B. Scobey.

Jacqueline B. Dixon, Nashville, Tennessee, for the appellee, Kathleen J. Scobey.

## OPINION

Kathleen J. Scobey ("Wife") and Todd B. Scobey ("Husband") were married in 1993 and had one child. They divorced by final decree on March 5, 2013 on the grounds of irreconcilable differences. The final decree incorporated the marital dissolution agreement ("MDA") and a permanent parenting plan.

Wife filed a petition with the Chancery Court for Williamson County on January 10, 2014, requesting that the court find Husband in civil contempt for the following: (1) failing to have a qualified domestic relations order ("QDRO") prepared for two retirement accounts in violation of paragraph 13 of the MDA; (2) failing to transfer custodianship of the their child's college education savings accounts ("UTMA accounts")[1] to Wife in violation of paragraph 7 of the MDA; (3) failing to give Wife an accounting of a debt owed to the parties in violation of paragraph 8 of the MDA; (4) failing to transfer to Wife half of the non-retirement portion of a T. Rowe Price account in violation of paragraph 13 of the MDA; and (5) failing to disclose income earned during the marriage in violation of paragraph 29 in the MDA. Additionally, Wife requested that Husband pay her attorney's fees in accordance with the MDA's enforcement provision.

Husband filed an answer denying Wife's charges of contempt and filed a petition to modify child support, seeking a reduction in his child support payments due to a decrease in income. Wife filed a response opposing any decrease in child support.

The parties engaged in mediation in September 2014 and entered into an agreed order that required Husband to hire an attorney to prepare the QDROs for the retirement accounts and to transfer custodianship of the UTMA accounts to Wife. As a consequence of Wife instituting legal proceedings to force Husband to comply with the MDA, Husband had the QDROs prepared, transferred custodianship of the UTMA accounts to Wife, and provided Wife with an accounting of the debt owed to the parties. However, the parties failed to agree on other issues. Thus, at the time of trial, the parties continued to dispute (1) Wife's request for attorney's fees, (2) Wife's allegation of contempt

---

[1] The accounts were established under the Uniform Transfers to Minors Act, Tenn. Code Ann. § 35-7-101 to -226.

regarding Husband's refusal to transfer half of the non-retirement funds in a T. Rowe Price account to Wife, (3) Husband's failure to disclose income earned during the marriage, and (4) Husband's petition for a decrease in his child support obligation.

The remaining issues were tried on June 10, 2015, and Wife and Husband were the only witnesses. At the conclusion of the trial, the court found in favor of Wife on all issues. First, the trial court found Husband in civil contempt for violating paragraph 13 of the MDA, which provided that Wife would receive one-half of the funds in a T. Rowe Price account:

> **13. RETIREMENT/PENSION PLANS:** Upon entry of Final Decree of Divorce, one-half of the funds and assets in the T. Rowe Price Roth IRA, account ending in #5830, styled in the name of Husband, shall be, and is hereby, transferred to Wife, and said one-half shall be divested out of Husband and vested absolutely in Wife.

The court found that the T. Rowe Price account referenced in paragraph 13 contained both retirement and non-retirement funds, though the MDA listed it as a retirement asset. The court also found that the parties intended to divide both the retirement and the non-retirement assets equally and that Husband fully understood this intent. Yet, Husband only transferred half of the retirement assets to Wife. Thus, the court concluded that Husband willfully violated paragraph 13 of the MDA and ordered Husband's incarceration until he paid Wife $8,960.15, plus interest, which represented half of the non-retirement funds contained in the account at the time of the divorce.

Second, the court found Husband in civil contempt for violating the disclosure provision in the MDA, which states:

> **29. COMPLETE DISCLOSURE:** The parties acknowledge that there are no assets owned by them, either jointly or individually, and that they have no interests in any assets which are not reflected by the terms of this Agreement. The parties warrant and represent that they have made full disclosure to each other of their respective incomes, anticipated incomes, and all assets in which they have interests….Should it develop that there are undisclosed assets, the party to whom the assets were not disclosed shall have a right to an equitable share of same….

The court ruled that Husband violated this provision by failing to deposit two paychecks issued on March 1, 2013 into the couple's joint bank account, which Husband earned for work performed through February 22, 2013, prior to the divorce. The trial court

concluded that Husband's act of cancelling the automatic deposit showed that Husband intended to conceal his earnings from Wife.[2] The court ordered Husband's incarceration until he paid Wife $8,018.71, which equaled one-half of both paychecks.

Third, the court denied Husband's petition to reduce child support. It found that Husband "totally, completely, and without explanation" failed to provide sufficient evidence for it to properly calculate what Husband's income would be in 2015. The court found that Husband was not a credible witness, and it could not determine "what [Husband's] income is now or will be in the future based on a paycheck stub that he presented that is three months old."

The court also awarded Wife her attorney's fees based on the MDA and Tenn. Code Ann. § 36-5-103(c). As the court explained, Wife was contractually entitled to attorney's fees and expenses in accordance with the enforcement provision in the MDA because her attorney's fees "were both reasonable and necessary" to ensure Husband's compliance with the terms. The court also explained that Wife was entitled to recover her attorney's fees under Tenn. Code Ann. § 36-5-103(c), which provides that a party is entitled to attorney's fees when that party prevails in a child support action. After Wife's attorney submitted an accounting of her fees, the court ordered Husband to pay $28,664.64 of Wife's attorney's fees.

## ANALYSIS

Husband contends the trial court erred (1) by finding Husband in civil contempt, (2) by dismissing Husband's petition to modify child support, and (3) by awarding Wife her attorney's fees. Additionally, Wife asks us to decide whether she should be awarded her attorney's fees on appeal.[3]

## I. CONTEMPT

In order to prevail on a civil contempt claim, the plaintiff must establish four elements. *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 354 (Tenn. 2008). First, the plaintiff must establish that the order alleged to have been violated is lawful. *Id.* An order is lawful if it is "issued by a court with jurisdiction over both the subject matter of the case and the parties." *Id.* at 355. The determination of

_____

[2] The proof established that during the marriage, Husband had his employer automatically deposit his paychecks into the parties' joint bank account. However, just prior to the divorce, Husband cancelled the automatic deposit and failed to inform Wife of it.

[3] Husband also included in one of his arguments that the court erred by admitting "the T. Rowe Price account statement" into evidence; however, Husband did not identify this as an issue in his brief as required by Tenn. R. App. P. 27(a)(4). Therefore, we deem this issue waived.

whether a particular order is lawful is a question of law, which we review de novo with no presumption of correctness accorded to the trial court. *Id.*

Second, the plaintiff must establish that the order is clear, specific, and unambiguous. *Id.* at 354. "A person may not be held in civil contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable a reasonable person to know exactly what actions are required or forbidden." *Id.* at 355. Such a determination is a legal inquiry, subject to a de novo review. *Id.* at 356.

Third, the plaintiff must prove by a preponderance of the evidence that the defendant actually violated the order. *Id.* This is a factual issue to be decided by the court. *Id.* Thus, our review is de novo, on the record, with a presumption that the trial court's factual findings are correct unless the evidence preponderates against those findings. *Id.*; Tenn. R. App. P. 13(d).

Finally, the plaintiff must prove that the violation of the order was willful. *Konvalinka*, 249 S.W.3d at 356. If a person "knows what he or she is doing and intends to do what he or she is doing," then that person is acting willfully. *Id.* at 357 (quoting *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006)). "[A]cting contrary to a known duty may constitute willfulness for the purpose of a civil contempt proceeding." *Id.* A determination of willfulness is a factual issue, "uniquely within the province of the finder-of-fact who will be able to view the witnesses and assess their credibility." *Id.* Therefore, willfulness is also reviewed de novo, with a presumption of correctness accorded to the trial court. *Id.*; Tenn. R. App. P. 13(d).

If the court determines that a party has willfully violated a lawful and unambiguous order, the court may, in its discretion, hold the party in civil contempt. *Konvalinka*, 249 S.W.3d at 358. On appeal, the court's decision is entitled to great weight, and a decision to hold a party in civil contempt is reviewed using the abuse of discretion standard. *Id.* "This review-constraining standard does not permit reviewing courts to substitute their own judgment for that of the court whose decision is being reviewed." *Id.* When reviewing a discretionary decision, the reviewing court should review the decision to determine

> (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. When called upon to review a [trial] court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained

in Tenn. R. App. P. 13(d) and should review the [trial] court's legal determinations de novo without any presumption of correctness.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010) (internal citations omitted).

A.  THE T. ROWE PRICE ACCOUNT

Paragraph 13 of the MDA stated that Wife would receive one-half of the funds in a "T. Rowe Price Roth IRA, account ending in #5830." Both parties testified that the "account ending in #5830" did not refer to an account number but to an investor number. Wife claimed that the investor number only covered three accounts, which would make the account easily identifiable under that number. Husband claimed that the investor number covered twelve accounts, and he assumed that paragraph 13 only addressed the retirement accounts managed by T. Rowe Price under that investor number.

To support her contention, Wife presented a copy of a T. Rowe Price monthly statement that reported the account balances as of October 31, 2012. The first page of the statement identified three "T. Rowe Price Mutual Funds" accounts, all of which were listed under one "Investor Number." The aggregate portfolio value of the accounts was $30,056.34. The first account was named "Prime Reserve" ("prime reserve account") and it was listed under a heading titled "Nonretirement." The value of this account was $17,920.36. The two smaller accounts, named "T. Rowe Price Health Sciences" and "T. Rowe Price Small-Cap Stock" (collectively, "retirement accounts"), were listed immediately below the prime reserve account under the heading "Retirement." On the second page of the monthly statement, the three accounts were again identified, but this time there was a separate "account number" beside each named account.

Wife testified that she used the investor number instead of the individual account numbers because she assumed the investor number would be adequate to identify all three accounts. Both Husband and Wife testified that while they intended to specifically address the prime reserve account in the MDA, that account was not specifically addressed anywhere in the MDA by its name or by its specific account number. Husband went on to explain that he did not realize the MDA did not specifically identify the prime reserve account until months after he signed it. Husband testified:

> It was the end of the day. It was a final negotiation. When we received the draft, even the large equitable securities was missing from it and I brought that to their attention. And they said, "Oh, let me go add that in. That was a mistake." I did not look at the brokerage part.

Husband also testified that T. Rowe Price managed twelve separate accounts for the parties under one investor number, some of which were retirement accounts, some of which were non-retirement brokerage accounts, and some of which were UTMA accounts for the benefit of their child. On cross-examination, Wife conceded that she received an email from Husband while negotiating the MDA, providing her with a list of all twelve accounts managed by T. Rowe Price. That list included the prime reserve account, which was identified as a brokerage account and was accompanied by an account number. Wife testified on cross-examination:

> I have been aware of all of the accounts from the get-go. I handle the bills. I know every account number. And [my attorney and I] were under the assumption that using an investor number that covers a certain amount of accounts, that that number covers—is the umbrella for those accounts; not of one, not two, not three, but all.

It is undisputed that Husband divided the two retirement accounts in accordance with paragraph 13 but that he did not divide the prime reserve "nonretirement" account.

The court ruled that the provision in the final decree that required the equal division of the T. Rowe Price account was "clear, specific and unambiguous." The court further ruled that Husband willfully violated the provision when he refused to transfer half of the funds in the prime reserve account to Wife. While neither party disputes that the provision was a lawful order, Husband argues that it was not clear or specific enough to warrant a finding of contempt. We agree with Husband on this issue.

The narrow issue here is whether Husband "willfully violated a lawful and sufficiently clear and precise order," not whether he breached the parties' agreement to divide the accounts equally. *Konvalinka*, 249 S.W.3d at 358. Unlike breach of contract cases, we cannot go beyond the four corners of the order in contempt cases to clarify an ambiguity. *See Id.* at 359. To the contrary, we can only look to the order being enforced to ascertain whether a party willfully violated a lawful and unambiguous order. *See id.* As our courts have explained, "[l]itigants are entitled to rely on the reasonable interpretation of orders, and the use of the 'plain and ordinary meaning' standard to interpret orders assures that litigants will be treated fairly." *Id.*

The provision of the order at issue addresses "retirement" assets managed by T. Rowe Price under "account ending in #5830." The prime reserve account is identified on the T. Rowe Price statement as a "nonretirement" account with an "account number" that does not end in 5830, although the "investor number" does end in 5830. The evidence admitted at trial showed that T. Rowe Price managed twelve accounts for the parties, some of which were retirement accounts, some of which were non-retirement accounts, and some of which were UTMA accounts. The MDA was divided into sections which

separately addressed retirement accounts, brokerage accounts, and UTMA accounts. Thus, there was some discrepancy between the numbers and names used to describe the accounts on the T. Rowe Price statement and the numbers and names used to describe the accounts in the MDA. This discrepancy created an ambiguity. Of course, this ambiguity could be clarified by going beyond the four corners of the order to ascertain the parties' intentions but the courts are not permitted to go beyond the four corners of the order in contempt cases to clarify an ambiguity. *See Konvalinka*, 249 S.W.3d at 359. Accordingly, we are unable to conclude that the terms as expressed in the order, as they pertain to the non-retirement account, are clear, specific, and unambiguous.

To prevail on a civil contempt claim, the plaintiff must establish four elements. *Id*. at 354. One of the essential elements is that the order is clear, specific, and unambiguous. *Id.* As the court explained in *Konvalinka*, the order must precisely explain "the details of compliance in a way that will enable a reasonable person to know exactly what actions are required or forbidden." *Id*. at 355. We have concluded that the order, as it pertains to the non-retirement prime reserve account, fails to satisfy this requirement. Therefore, Husband cannot be held in contempt for failing to comply with this provision.

### B. UNDISCLOSED ASSETS

Wife testified that she was still living with Husband after their divorce in March 2013 because she had not yet closed on her new house. During the second or third week in March, she opened a drawer in Husband's desk while looking for staples and found two paychecks issued on March 1, 2013. Both checks consisted of income Husband earned from February 9 through February 22, 2013, totaling $16,037.42.

In her testimony, Wife explained that while married, the couple had a joint bank account. Husband had his paychecks automatically deposited into the account and Wife paid the bills from that account. When the couple divorced, the MDA required the parties to split the contents of the joint account equally. Upon entering the final decree, Wife wrote Husband a check for half of the funds in the account and then put the account solely in her name, as the parties had agreed in the MDA. Because the paychecks issued to Husband on March 1 had not been automatically deposited into the account, Wife had been unaware of their existence. Therefore, that income was not divided, though Husband earned it during the marriage.

Husband admitted that during the course of the marriage, he had his paychecks automatically deposited into the couple's joint bank account, and before the couple's divorce became final, he canceled the automatic deposit. Husband testified that he understood that the MDA required that he and Wife equally divide the assets in the joint bank account, which included both parties' income during the marriage. He claimed, however, that he and Wife discussed their paychecks for February, and that he told Wife

he was going to deposit his earnings from that month into his new account, and she could, likewise, keep her entire income for that month. Husband testified:

> I was—we were looking at March as different…[Wife] said, "Well, I deposited my check into [the joint account]." And I said, "Well, make sure we back that out—make sure we back that out when we do the final split." So there was nothing underhanded in trying to hide the checks. It was certainly a motivator for me to sign the MDA and not go to trial because I thought, there's money coming….

In her testimony, Wife confirmed that Husband told her to remove her most recent paycheck from the joint account before dividing it, but she denied that Husband ever told her he was keeping his income from February. Wife explained:

> A. I had a paycheck that [Husband] told me to keep. Because I think one of two things: He either felt guilty because he knew that he had withheld some large checks, or because of the inequity in how we split things, that he kept the boat and he had in excess of $16,000 in our home assets.
> …
> Q. How much was the amount that you backed out [of the joint account]?
>
> A. It was four-thousand-some-odd dollars.

The trial court found that the disclosure provision in the MDA was a clear, lawful order that Husband willfully violated when he failed to disclose his February earnings to Wife. Husband does not dispute the trial court's determination that the order was lawful and clear; however, he contends he did not violate the provision because Wife was aware of Husband's February income as manager of the couple's joint bank account. Even if Wife was unaware of Husband's February income, Husband claims that since he received the checks after the divorce became final, they constituted "future income." He argues that he was not required to disclose "future income" for the purposes of dividing the joint bank account.

Whether Husband actually violated the order is a factual issue, and the trial court is entitled to a presumption of correctness unless the evidence preponderates otherwise. *See Konvalinka*, 249 S.W.3d at 356. The trial court credited Wife's testimony, describing her demeanor while testifying as "direct, to the point, and responsive." To the contrary, the trial court described Husband as inconsistent, evasive, and vague. More importantly, the trial court made the express determination that Husband's "testimony was not credible." Because the trial court is in a better position to make credibility findings, we

defer to the trial court. *See Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) ("When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility…."). [4]

Paragraph 29 of the MDA required the parties to "warrant and represent that they have made full disclosure to each other of their respective incomes, anticipated incomes, and all assets in which they have interests." Wife testified that during the marriage Husband had his paychecks automatically deposited into the couple's joint bank account. Before the divorce became final, Husband cancelled the automatic draft for his February income and did not inform Wife. Therefore, Wife assumed that the February income had been deposited into the joint bank account before she divided the account. Wife was unaware of Husband's February income until she discovered the checks in mid-March. Because Husband did not make Wife aware of that income, Husband violated the disclosure provision in the MDA. Husband's contention that his February earnings constituted "future income" is meritless. The couple divorced on March 5, 2013. The February income qualified as a marital asset for the purposes of division and was covered under the disclosure provision in the MDA.

The trial court also found that Husband's violation was willful. A determination of willfulness is a factual issue, "uniquely within the province of the finder-of-fact who will be able to view the witnesses and assess their credibility." *Konvalinka*, 249 S.W.3d at 357. Husband admitted that he intended to withhold his February income from Wife; however, he claims he never intended to conceal it from her. We agree with the trial court that Husband's purposeful act of cancelling the automatic draft strongly indicated that Husband intended to conceal this asset from Wife. The trial court credited Wife's testimony that Husband did conceal it until she discovered the paychecks sometime in March. Therefore, the trial court did not err by holding Husband in civil contempt for violating the disclosure provision in the MDA.

## II. CHILD SUPPORT MODIFICATION

Tenn. Code Ann. § 36-5-101(g)(1) governs child support modification. It provides, "Upon application of either party, the court shall decree an increase or decrease in support when there is found to be a significant variance, as defined in the child support guidelines established in subsection (e), between the guidelines and the amount of support currently ordered…." A significant variance is defined as "at least a fifteen percent (15%) change between the amount of the current support order…and the amount of the proposed presumptive support order…." Tenn. Comp. R. & Regs. 1240-2-4-.05(2)(c). Tenn. Comp. R. & Regs. 1240-02-04-.05(3) sets out the procedure for determining whether a significant variance exists:

---

[4] Husband does not question the court's credibility findings on appeal.

- 10 -

> To determine if a modification is possible, a child support order shall first be calculated on the Child Support Worksheet using current evidence of the parties' circumstances….If the current child support order was calculated using the income shares guidelines, compare the presumptive child support order amounts in the current and proposed orders….If a significant variance exists between the two amounts, such a variance would justify the modification of a child support order….

"Because child support is based on income, an award for future support, including prospective modification, is necessarily based upon most recent actual income." *Tinsley v. Tinsley*, No. M2001-02319-COA-R3-CV, 2002 WL 31443210, at *4 (Tenn. Ct. App. Nov. 1, 2002).

The trial court has discretion when making child support determinations; however, that discretion is limited by the child support guidelines. *Smith v. Darmohray*, No. M2003-00236-COA-R3-JV, 2004 WL 904095, at *4 (Tenn. Ct. App. Apr. 27, 2004). We review the record de novo with a presumption that the court's factual findings are correct, absent a showing that the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000).

The trial court denied Husband's petition to reduce child support, finding that Husband did not meet his burden of proof. At trial, Husband testified that the original child support order directed him to pay $1,786 per month based on his 2012 gross income of $275,000 and Wife's 2012 gross income of $42,000. Husband submitted a new child support worksheet that calculated his child support payments to be $1,361 per month based on his 2014 gross income of $200,451 and Wife's 2014 gross income of $80,971. The difference in the original and proposed orders constituted a deviation of more than fifteen percent. However, for child support purposes, the relevant income at the time of trial, June 10, 2015, was Husband's and Wife's most current income for 2015. *See* Tenn. Comp. R. & Regs. 1240-02-04-.05(3); *see also Langlo v. Langlo*, No. E2014-00548-COA-R3-CV, 2015 WL 1810513, at *6 (Tenn. Ct. App. April 20, 2015) (Mother's 2012 tax return was not sufficient to establish Mother's income as of October 2013).

Husband testified that he was on target to make the same in 2015—approximately $200,451. He calculated Wife's income to be $74,151 for 2015 based on her W-2 from 2014. However, Wife presented W-2s from 2014 that showed Husband's income was actually $213,266 for that year and Wife's income was $67,126. Wife also testified that as of 2015, she would no longer receive a base salary and would only earn commissions. She presented a paycheck which showed her year-to-date income through the end of May 2015 and estimated that her income for 2015 would be $45,000 to $55,000.

As evidence of his 2015 income, Husband presented a paycheck issued on April 17, 2015. He claimed that his future paychecks would be consistent with his April paycheck in terms of his base salary; however, it would not be consistent with the commissions and bonuses he would earn in the future.[5] While Husband testified that he would likely earn the same in 2015 as he did in 2014, the trial court did not credit his testimony, and we defer to the trial court on the issue of witness credibility. *Kelly*, 445 S.W.3d at 692. Moreover, the 2014 W-2s entered into evidence at trial showed that Husband's testimony about Husband's and Wife's 2014 income was erroneous.

Thus, we have determined that the trial court could not adequately calculate Husband's 2015 income based on (1) Husband's erroneous testimony regarding his and Wife's past income, (2) Husband's two-month-old paycheck, which did not accurately reflect his current or prospective income, and (3) Husband's unreliable testimony about his future income. Because Husband did not provide the trial court with evidence of his "most recent actual income," and did not present credible testimony concerning his and Wife's past or future income, we affirm the trial court's decision to deny Husband's petition to decrease child support. *Tinsley*, 2002 WL 31443210, at *4.

III.    ATTORNEY'S FEES AT TRIAL

Marital dissolution agreements are contracts between the parties contemplating divorce. *Eberbach v. Eberbach*, No. M2014-01811-SC-R11-CV, 2017 WL 2255582, at *3 (Tenn. May 23, 2017). After a divorce decree becomes final, a marital dissolution agreement does not lose its contractual nature, and courts are to enforce provisions in contracts that expressly allow a party to recover his or her attorney's fees incurred in disputes over the contract. *Id*. The entitlement to recover attorney's fees, however, is limited to the parameters set out in the contract, and the fee provision is subject to the rules of contract interpretation. *Id*. at *7. Contract interpretation is a question of law.

---

[5] Husband testified:

> The Court: …Well, are your commissions pretty consistent per quarter?
> The Witness: No.…
>                                   …
> Q. Have you received any bonuses since the date of this pay period ending 4-17?
> A. I received draws which are a portion of the bonus. And then I did receive a reconciled about two weeks ago.
> Q. Do you know what gross it showed on that? Would it show a year-to-date?
> A. For that one, no I don't. It was similar to this. So $8,000 for the quarter in commission.

*Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). We accordingly review the trial court's conclusions de novo with no presumption of correctness. *Id.*

The enforcement provision in the MDA states:

> **23. NONCOMPLIANCE:** In the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, he or she shall also be entitled to a judgment for reasonable expenses, including attorney fees, incurred in prosecuting the action.

Thus, according to the plain terms of the enforcement provision, Wife is entitled to a judgment for reasonable expenses, including attorney fees, incurred in prosecuting this action if it is determined that it was "reasonably necessary for [Wife] to institute legal proceedings to procure the enforcement of any provision of this Agreement."

The trial court determined that it was reasonably necessary for Wife to institute this action to force Husband to comply with the MDA, and we fully agree with that finding. Nevertheless, Husband contends that her fees should be reduced because she was only granted "partial relief" and "most of the work" for which Husband was required to pay Wife was either "work that was unnecessary" or concerned issues on which Husband ultimately prevailed. We find no factual basis for this contention and Husband's citations to the record to support the generalized contentions are meager at best.

The record reveals that it was not only reasonably necessary for Wife to institute these legal proceedings but it was also reasonably necessary for her to pursue the litigation, because even with the litigation pending, Husband was very slow to comply with the provisions at issue. Moreover, Husband's contention that Wife is not "the prevailing party" is not persuasive because she was the prevailing party on almost every claim. Moreover, the Noncompliance Provision in the MDA states that a party is entitled to attorney's fees if it becomes reasonably necessary for that party to procure legal services to enforce any provision in the MDA. The trial court found that it was reasonably necessary for Wife to procure legal services to obtain Husband's compliance with the MDA, and we agree with the court's finding. Furthermore, Wife prevailed in almost every claim she asserted in the petition in the trial court and on appeal. Thus, Wife is entitled to recover the reasonable and necessary attorney's fees she incurred to enforce Husband's compliance with the MDA.

The trial court also concluded that under Tenn. Code Ann. § 36-5-103(c), Wife was entitled to recover the attorney's fees that she incurred in defending Husband's petition to reduce his child support obligation. Tenn. Code Ann. § 36-5-103(c) gives the trial court discretion to award attorney's fees to the party who successfully defends a

- 13 -

child support order. We will not reverse a trial court's decision to award attorney's fees under the statute unless the trial court has abused its discretion. *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). Since Wife prevailed on the issue of child support, we find that the trial court did not abuse its discretion in awarding Wife the attorney's fees she incurred in defending the original child support order.

For the foregoing reasons, we affirm the award of the attorney's fees Wife incurred in the trial court proceedings.

IV.    ATTORNEY'S FEES ON APPEAL

Wife seeks to recover her attorney's fees incurred on appeal. Wife has prevailed on all but one issue on appeal, and we find it was reasonable and necessary for Wife to oppose Husband's appeal. Thus, for the same reasons the trial court concluded that Wife was entitled to recover the fees she incurred in the trial court, we conclude that Wife is entitled to recover the reasonable and necessary attorney's fees she incurred on appeal. Accordingly, we remand with instructions for the trial court to determine the amount she is entitled to recover and make an appropriate award.

IN CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Todd B. Scobey.

_____
FRANK G. CLEMENT JR., P.J., M.S.