IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 1, 2019

## MORRISTOWN HEART CONSULTANTS, PLLC, ET AL. v. PRAGNESH PATEL, M.D.

**Appeal from the Circuit Court for Hamblen County**
**No. 15-CV-185      Robert E. Lee Davies, Senior Judge**

_____

**No. E2018-01590-COA-R9-CV**

_____

We granted this Tennessee Rule of Appellate Procedure 9 interlocutory appeal to consider whether the Trial Court erred in ordering disclosure of the representation file maintained by attorney Troy L. Bowlin, II, during his representation of Morristown Heart Consultants, PLLC ("MHC") to a member of MHC. We find and hold that the Trial Court did not err in determining that MHC had not properly authorized the hiring of Mr. Bowlin and that attorney-client privilege did not apply to prevent disclosure of Mr. Bowlin's legal file to a member of MHC with fifty percent financial rights and thirty-three percent governing rights to the company. We, therefore, affirm the Trial Court's order permitting the member to acquire Mr. Bowlin's legal file concerning MHC and conduct relevant discovery concerning that representation.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court
Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY W. ARMSTRONG, J., joined.

Troy L. Bowlin, II, Morristown, Tennessee, for the appellants, Morristown Heart Consultants, PLLC, and Sunil T. Ramaprasad, M.D.

F. Clinton Little, Knoxville, Tennessee, and Matthew B. Evans and Matthew W. Sexton, Morristown, Tennessee, for the appellee, Pragnesh Patel, M.D.

# OPINION

## Background

MHC is a closely-held professional limited liability company operating in Tennessee. In 2007, Sunil Ramaprasad, M.D. ("Dr. Ramaprasad") began MHC. In August 2009, Dr. Ramaprasad and Pragnesh Patel, M.D. ("Dr. Patel") entered into the "Operating Agreement of Morristown Heart Consultants, PLLC" ("Operating Agreement"). The Operating Agreement provided in pertinent part:

Management. The Company shall be Member-managed in accordance with this Agreement.

\* \* \*

Members. The Members of the Company at this time are Sunil Ramaprasad, M.D. (herein, "Sunil") and Pragnesh Patel, M.D. (herein, "Pragnesh") Their capital contributions and their percentage interest in the Company are noted on EXHIBIT A, which is attached hereto. The Members acknowledge that, simultaneously with the execution hereof, the Members entered into that certain Membership Interest Purchase Agreement (the "Purchase Agreement"), through which Sunil agreed to sell, and Pragnesh agreed to purchase, a fifty (50%) percent Membership Interest in Company pursuant to the terms and conditions of the Purchase Agreement. In accordance with the Purchase Agreement, Sunil shall grant, and Pragnesh shall receive: (i) on the execution date of the Purchase Agreement (the "Execution Date"), a one (1%) percent Membership Interest in Company; (ii) on the twelve (12) month anniversary of the Execution Date, a twenty-four (24%) percent Membership Interest in Company, and, on the twenty-four (24) month anniversary of the Execution Date, an additional twenty-five (25) percent Membership Interest in company. Pragnesh's compensation for the 1st three (3) years of his membership in Company shall be governed by the Purchase Agreement.

\* \* \*

## ARTICLE 7
## MEETINGS OF MEMBERS

1. Annual Meeting. The annual meeting, if any, shall be held at a time and place as decided by a majority of the Members.

2.  Special Meetings.  Meetings of the Members may be called by any Member owning TEN PERCENT (10%) or more of the Company.  The place and time of the meeting shall be determined by the Member calling for the meeting.

3.  Voting by Members.  Members shall be entitled to vote on all matters which provide for a vote of the Members in accordance with each Member's Membership interest.

4.  Written Consent.  Action of the Members or Officers may be accomplished with or without a meeting.  If a meeting is held, evidence of the action shall be by Minutes or Resolution reflecting the action of the Meeting and signed by the requisite number of Members needed to consent to the proposed action.  Action without a meeting may be evidenced by a written consent signed by the requisite number of Members needed to consent to the proposed action.

5.  Majority Required.  Unless otherwise stated in this Agreement, a majority vote of all the Membership Interests of the Company at that time shall be required to authorize the proposed action.

6.  Notice.  Notices of meetings shall be in writing stating the date, time and purpose of such meeting.  Notices shall be delivered either personally, by mail or electronic mail to each Member of the Company.  Such notices must be delivered at least Twelve (12) business days but not more than Thirty (30) business days prior to such meeting date, and shall be deemed delivered when deposited in the mail postage paid and properly addressed, upon hand delivery or upon an electronic mail transmission.  Actual notice, no matter how delivered, shall suffice.

7.  Waiver of Notice.  Whenever a notice is required in this Agreement, a Member may waive the notice requirement in writing either before or after the time that the notice was due.  If a Member attends such meeting, then notice shall be presumed received.

(Other paragraph numbering omitted.)

At some later point, Dr. Patel's physician privileges were temporarily suspended by Morristown-Hamblen Healthcare System.  The record on appeal does not specify the reasoning behind the suspension.  Following the suspension of Dr. Patel's privileges, Dr. Patel and Dr. Ramaprasad signed a Memorandum of Understanding ("MOU") on June 2, 2015.  The MOU provided "certain amendments and clarifications" to the Operating Agreement.  Specifically, the MOU provided in relevant part:

Whereas certain events occurred on or about May 13, 2015 that have caused a requirement on the part of Patel that he participate in a mini-fellowship during a ninety day leave of absence from the PLLC, commencing on or about June 1, 2015, and

Whereas certain amendments and clarifications to the PLLC Operating Agreement are desired by the founding member and Patel, all matters considered, is agreeable thereto.

* * *

2. Financial rights shall remain the same at fifty percent each, except as otherwise specified herein.

3. Governance rights shall be sixty-seven percent Ramaprasad and thirty-three percent Patel. Ramaprasad shall make all practice management decisions including, without limitation, practice rules and regulations.

* * *

9. The Operating Agreement of August 21, 2009 and any Employee Handbook provisions applicable, except as modified by this Memorandum of Understanding, are ratified and reaffirmed.

Next to the provision regarding governance rights, the MOU included the following notation: "To be renegotiated in 2 yr."

On September 15, 2017, Dr. Patel filed a motion seeking a copy of the contents of the legal file of attorney Ron Perkins located at the law office of Bacon, Jessee, Perkins, Carroll, and Anderson. Mr. Perkins served as attorney for MHC when the MOU was drafted. Following a hearing on January 16, 2018, the Trial Court ordered that counsel for Dr. Patel was "entitled to all documents regarding Morristown Heart Consultants 'MHC' during the time Dr. Patel had an ownership interest of MHC in the attorney file located at Bacon, Jessee, Perkins, Carroll and Anderson."

Subsequently, Dr. Patel filed a motion seeking to obtain a copy of the legal file of attorney Troy L. Bowlin, II, from the date Mr. Bowlin was engaged as counsel for MHC until September 19, 2015. Dr. Patel argued that he, as a fifty-percent owner of the company through September 19, 2015, was entitled to the company's legal file during the time he was an owner. According to Dr. Patel, Mr. Bowlin's legal file concerning MHC would reveal evidence pertaining to the validity and enforceability of the MOU. Dr. Patel contended that Dr. Ramaprasad hired an attorney on behalf of MHC without

- 4 -

notifying Dr. Patel even though Dr. Patel maintained fifty-percent financial rights and thirty-three percent governing rights to MHC. Additionally, Dr. Patel averred that his "monies through MHC (as a 50% owner) were being paid to Mr. Bowlin, without Patel's knowledge or consent, for Ramaprasad to acquire legal advice contrary to MHC's governing documents, contrary to the MHC's best interests, to acquire the firing of Patel, and for the personal benefit and improper gain of Ramaprasad." As such, Dr. Patel requested that he be allowed access to the legal file during the time he maintained rights in MHC.

MHC and Dr. Ramaprasad filed a response to Dr. Patel's motion, asserting that the legal file of Mr. Bowlin was protected from disclosure to Dr. Patel under attorney-client privilege. This response stated that Mr. Bowlin's representation of MHC "was for the purpose of advising the Practice on the effect of the MOU in conjunction with the Operating Agreement and at that time Dr. Ramaprasad had controlling 'governance rights.'" According to MHC and Dr. Ramaprasad, Dr. Patel retained a fifty-percent financial interest in MHC but had only minority governance rights, and therefore, did not have authority to control the hiring of an attorney for MHC. Additionally, they assert that at the time of the motion's filing, Dr. Patel was no longer a member of MHC and had no ability to waive attorney-client privilege on behalf of MHC.

Following arguments by counsel, the Trial Court made the following findings of fact:

1. Attorney Troy Bowlin represented MHC during the time in which Dr. Patel had a 50% ownership of the financial rights and 33% of the governing rights of MHC.

2. Regarding Dr. Patel's ownership and interest in MHC, it is undisputed, for purposes of this hearing, that:

    a. Dr. Patel was a 50% owner of MHC from 2012 to June 2, 2015;

    b. From June 2, 2015 to September 19, 2015, it is disputed whether Dr. Patel continued to be a 50% owner of MHC;

    c. The Memorandum of Understanding provided that Dr. Patel maintained 50% financial rights and 33% governing rights of MHC from June 3, 2015 until September 19, 2015; and

    d. Mr. Bowlin was hired by Dr. Ramaprasad to represent MHC during the time period in which the MOU provided that Dr. Patel maintained 50% financial rights and 33% governing rights of MHC. However, Mr. Bowlin was hired without the knowledge of Dr. Patel.

3. Article 7, Section 4-7 of MHC's Operating Agreement (attached hereto as Exhibit 1) requires that an official meeting and majority vote, or written consent by voting members, must take place prior to MHC taking official actions such as the engagement of an attorney for representation.

4. The Memorandum of Understanding (attached hereto as Exhibit 2), the validity of which is disputed but for purposes of this hearing is presumed valid, executed by Dr. Patel and Dr. Ramaprasad, does not amend Article 7, Sections 4-7 of the Operating Agreement of MHC with regard to the requirement that an official meeting and majority vote, or written consent by voting members, must take place prior to MHC taking official actions such as the engagement of an attorney for representation.

5. In order for MHC to invoke, raise or otherwise enjoy the attorney-client privilege to prohibit Dr. Patel's acquisition of the attorney's file for MHC and discovery of communications by and between its attorney on its behalf, the Operating Agreement and specifically the terms in which . . . dictates relative to the company taking official action must first be adhered to and complied with.

6. It is undisputed that Dr. Ramaprasad engaged Mr. Bowlin on behalf of MHC without complying with the Operating Agreement and specifically Article 7, Sections 4-7.

7. Accordingly, because MHC did not properly authorize the hiring [of] Mr. Bowlin for representation, the attorney-client privilege between him and MHC does not apply to prevent Dr. Patel from acquiring the file and receiving all communications possessed or known by Troy L. Bowlin, II or conducting discovery in reference to his representation of MHC during the time period in which Dr. Patel was an undisputed owner.

The Trial Court, therefore, granted Dr. Patel's motion and ordered that Dr. Patel was permitted to conduct relevant discovery and receive Mr. Bowlin's legal file related to Mr. Bowlin's representation of MHC from the time Mr. Bowlin was engaged as an attorney for MHC through September 19, 2015.

Upon granting permission for MHC to appeal to this Court, pursuant to Tennessee Rule of Appellate Procedure 9, the trial court found as follows:

1. The Court grants Morristown Heart Consultants and Sunil Ramaprasad's motion for permission to appeal the Court's order requiring Attorney Bowlin to disclose the contents of his file from the commencement of

Attorney Bowlin's representation through September 19, 2015 with Morristown Heart Consultants, LLC to Dr. Patel, a member of the LLC[.] Dr. Patel has indicated he intends to depose Attorney Bowlin and seek further discovery beyond September 19, 2015. As such, this could likely result in Attorney Bowlin being required to withdraw from representation of Morristown Heart Consultants, LLC and Dr. Ramaprasad.

2. The Court recognizes that the issue raised by this discovery dispute between a limited liability company and a non-managing member is a novel issue on which there is no case law on point in the State of Tennessee. In this case, the Court assumed there was such an attorney-client privilege; however, the Court found that the privilege had been waived by the managing member's failure to comply with the procedure set forth in the operating agreement of Morristown Heart Consultants for the hiring of an attorney.

MHC filed for an interlocutory appeal to this Court, which was granted by this Court by order entered on November 8, 2018.

## Discussion

We granted this Rule 9 application to consider the sole issue of whether the Trial Court erred in ordering disclosure to Dr. Patel of the representation file maintained by attorney Troy L. Bowlin, II during his representation of MHC from the time of his engagement as corporate counsel through September 19, 2015.

"The law favors making all relevant evidence available to the trier of fact." *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002). However, certain privileges may limit discovery where applicable. So as to foster open communications between attorney and client, the law recognizes attorney-client privilege as one such privilege. Attorney-client privilege is not absolute, and "[t]he communications must involve the subject matter of the representation and must be made with the intention that they will be kept confidential." *Id.* at 213 (footnotes omitted). Attorney-client privilege belongs to the client and may be waived by the client. *Smith County Educ. Ass'n v. Anderson*, 676 S.W.2d 328, 333 (Tenn. 1984). "When the third party in whose presence such communications take place is an agent of the client, the confidentiality is not destroyed." *Id.* Appellate courts review a trial court's decision regarding attorney-privilege using the abuse of discretion standard. *Boyd*, 88 S.W.3d at 211. "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

In *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), the United States Supreme Court considered attorney-client privilege in the corporate context. In *Upjohn*, "[t]he communications at issue were made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel." *Id.* at 394, 101 S.Ct. 677 (footnote omitted). The Court found that these "[c]ommunications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice." *Id.* The Court concluded that "[c]onsistent with the underlying purposes of the attorney-client privilege, these communications must be protected against compelled disclosure." *Id.* at 395, 101 S.Ct. 677.

In this case, MHC contends that the Trial Court erred in failing to find that attorney-client privilege protected communications between MHC and Mr. Bowlin to prevent disclosure to Dr. Patel. The facts in this matter differ from *Upjohn* because there has been no determination that MHC properly authorized the hiring of Mr. Bowlin. As a member of MHC with thirty-three percent governing rights, Dr. Patel was "entitled to vote" on MHC's hiring of a corporate attorney, per the Operating Agreement. The hiring of Mr. Bowlin as MHC's corporate attorney could have been raised for voting at either the annual meeting of members or at a special meeting called by Dr. Ramaprasad. Dr. Patel would have been entitled to written notice at least twelve days prior to the meeting "stating the date, time and purpose of such meeting." Dr. Ramaprasad does not dispute that a meeting and vote to approve the action were not held concerning the hiring of Mr. Bowlin.

Alternatively, MHC could have accomplished the act by written consent without having a meeting. Without a meeting, Mr. Ramaprasad could have signed a written consent with his majority governing rights to approve the hiring of Mr. Bowlin and provided notice to Dr. Ramaprasad of the LLC's action. *See* Tenn. Code Ann. § 48-249-405(c) (2012). No evidence is in the record on appeal of written consent approving the action signed by Dr. Ramaprasad or notice of such action provided to Dr. Patel.

Additionally, it is undisputed that Dr. Ramaprasad had majority governing rights of MHC during the relevant time period. However, Dr. Patel maintained thirty-three percent governing rights and would have been entitled to cast his vote regarding whether MHC retained Mr. Bowlin as corporate counsel per the terms of the Operating Agreement. Dr. Patel was not provided notice of a meeting or given an opportunity to cast his vote. Without notice to Dr. Patel, a meeting, a vote, or written consent to authorize the action, Dr. Ramaprasad consulted Mr. Bowlin and obtained his legal services on behalf of MHC.

MHC disputed that Dr. Ramaprasad was required to hold a vote in order to hire counsel, arguing that the MOU changed the governance rights of MHC. MHC's attorney

acknowledged that a vote or written consent would have been required "had it not been for the change of governance rights." However, although the MOU indicated that Dr. Ramaprasad would make "all practice management decisions," it also stated that Dr. Patel maintained minority governing rights of MHC to be renegotiated in two years. The Trial Court therefore found that the MOU, entered into by Dr. Patel and Dr. Ramaprasad, did not alter Dr. Patel's entitlement to vote or the requirement that voting or written consent take place in order for a member to act on behalf of MHC. The Trial Court thereby found that those provisions of the Operating Agreement remained in effect.

Dr. Patel asserts that Dr. Ramaprasad's action of hiring Mr. Bowlin to represent MHC without voting by the members was an ultra vires act. Ultra vires is defined as "[u]nauthorized; beyond the scope of power allowed or granted by a corporate charter or by law." Black's Law Dictionary (11th ed. 2019). Concerning ultra vires actions and LLCs, Tennessee Code Annotated § 48-249-105 (2012) provides:

> (a) Limit on power to challenge. Except as provided in subsection (b), the validity of an LLC's action may not be challenged on the ground that the LLC lacks or lacked the power to act.
>
> (b) Challenge of power. An LLC's power to act may be challenged in a proceeding by:
>
>> (1) A member against the LLC to enjoin the act;
>>
>> (2) The LLC, directly, derivatively or through a receiver, trustee or other personal representative, against an incumbent or former director, manager, employee, agent or member of the LLC, as applicable; or
>>
>> (3) The attorney general and reporter under § 48-249-617.
>
> (c) Derivative action. In a member's proceeding, under subdivision (b)(1), to enjoin an unauthorized LLC act, the court may enjoin or set aside the act, if equitable, and if all affected persons are parties to the proceeding, and may award damages for loss suffered by the LLC or another party because of enjoining the unauthorized act.

Our Supreme Court has explained, however, that "it is not entirely accurate to say that an act which the corporation has the power to do (although it is required that it be done in a certain prescribed manner) is ultra vires if the corporation fails to do it in the statutory way." *Uffelman v. Boillin*, 19 Tenn. App. 1, 82 S.W.2d 545, 561 (1935). Because MHC had the power to hire an attorney if its member acted with proper

authorization from the LLC, we determine that § 48-249-105 is not applicable to this proceeding.

Instead, we determine Tennessee Code Annotated § 48-249-402(a) to be more applicable to the present circumstances. Pursuant to Tennessee Code Annotated § 48-249-402(a) (2012), a member acts as an agent of the LLC as follows:

> (1) Each member is an agent of the LLC for the purpose of its business, and an act of a member, including the signing of an instrument in the LLC's name, that is apparently for carrying on in the ordinary course the LLC's business, or business of the kind carried on by the LLC, binds the LLC, unless the member had no authority to act for the LLC in the particular matter, and the person with whom the member was dealing knew or had notice that the member lacked authority; and

> (2) An act of a member that is not apparently for carrying on in the ordinary course the LLC's business, or business of the kind carried on by the LLC, binds the LLC only if the act was authorized by the other members.

Dr. Ramaprasad's act of hiring an attorney to represent MHC in a potential action against Dr. Patel was not in the ordinary course of the LLC's business. Thus, Dr. Ramaprasad could only act as an agent of MHC if the act was authorized by voting or written consent per the Operating Agreement. Because Dr. Ramaprasad did not follow proper procedure for voting or written consent under the Operating Agreement, the Trial Court found and held that MHC had not properly authorized the hiring of Mr. Bowlin as counsel for MHC. As such, the Trial Court determined that attorney-client privilege did not prevent Dr. Patel, as a minority governing member, from accessing privileged communications during the time Dr. Patel was a minority governing member of MHC. We find no reversible error by the Trial Court.

The Trial Court's July 23, 2018 judgment appears to find that attorney-client privilege did not apply to the communications at issue due to the unauthorized hiring of counsel. However, in the Trial Court's subsequent August 29, 2018 order granting MHC's motion for an interlocutory appeal, the Trial Court stated that the attorney-client privilege between MHC and Mr. Bowlin had been waived by Dr. Ramaprasad's failure to follow proper procedure to act on behalf of MHC.

In order for attorney-client privilege to apply to communications between Dr. Ramaprasad, on behalf of MHC, and Mr. Bowlin, the communications must have involved the subject matter of legal representation and be made with the intention that the communications remain confidential. *See State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Tr.*, 209 S.W.3d 602, 616 (Tenn. Ct. App. 2006). In this matter,

MHC asserted in its response that MHC sought the legal advice of Mr. Bowlin as to "the effect of the MOU in conjunction with the Operating Agreement." We determine that communications between Dr. Ramaprasad, while acting on behalf of MHC, and Mr. Bowlin, as attorney for MHC, would be subject to attorney-client so long as those communications involved the subject matter of Mr. Bowlin's legal representation made with the intention of confidentiality.

The question then becomes whether MHC had waived attorney-client privilege based on its unauthorized hiring of Mr. Bowlin. Regarding waiver of attorney-client privilege, the Court has previous explained:

> "The [attorney-client] privilege is designed to protect the client and because it belongs to the client, may be waived by him." *Smith Cnty. Educ. Assoc. v. Anderson*, 676 S.W.2d 328, 333 (Tenn. 1984). "If a client divulges the communications he seeks to protect, then he has waived the attorney-client privilege with respect to the reported communications and the attorney may testify to its contents." *State v. Buford*, 216 S.W.3d 323, 326 (Tenn. 2007) (citing *Bryan* [*v. State*], 848 S.W.2d [72,] 80 [(Tenn. Crim. App. 1992)] (citing *Cooper v. United States*, 5 F.2d 824 (6th Cir.1925))). Waiver may also occur when the communications take place in the presence of a third party. *State ex rel. Flowers*, 209 S.W.3d at 616 (citing *Boyd* [*v. Comdata Network, Inc.*], 88 S.W.3d [203, 213 (Tenn. Ct. App. 2002)] (citation omitted)). Moreover, as explained by the Tennessee Court of Criminal Appeals in *Bryan*:
>
>> [A] party asserting the attorney-client privilege has impliedly waived it through the party's own affirmative conduct where three conditions exist:
>>
>> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;
>>
>> (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and
>>
>> (3) application of the privilege would have denied the opposing party access to information vital to his [or her] defense.
>
> *Bryan*, 848 S.W.2d at 81 (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975)).

*Culbertson v. Culbertson*, 393 S.W.3d 678, 684-85 (Tenn. Ct. App. 2012).

According to MHC's and Dr. Patel's appellate briefs, MHC filed a declaratory action against Dr. Patel in late 2015 over a dispute regarding the language to be included in letters sent to patients informing them of Dr. Patel's departure from MHC. Dr. Patel subsequently filed an answer to MHC's complaint and a counter-complaint against MHC and Dr. Ramaprasad involving allegations that Dr. Patel was wrongfully ousted from MHC and that MHC had refused to buy back Dr. Patel's membership interest in MHC upon his termination as a member.

As relevant to waiver of attorney-client privilege, MHC made an affirmative, as well as unauthorized, act of hiring Mr. Bowlin to represent MHC. Subsequently, MHC removed Dr. Patel as a member of MHC. Additionally, MHC filed a lawsuit against Dr. Patel regarding patient notification letters concerning Dr. Patel's departure from MHC. Because of MHC's affirmative actions, MHC's privileged communications with Mr. Bowlin became at issue in this case. Enforcing attorney-client privilege would have denied Dr. Patel access to information that was vital to his defense related to his removal as a member of MHC.

As such, we hold, as did the Trial Court, that MHC waived its attorney-client privilege and cannot enforce said privilege against Dr. Patel, who owned fifty-percent financial rights and thirty-three percent governing rights to MHC at all relevant times. We emphasize that this holding does not extend to make privileged communications between a PLLC and its attorney accessible to outside persons or entities or even other members of a PLLC under factual circumstances different from those in this case.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs incurred on appeal are assessed against the appellants, Morristown Heart Consultants, PLLC, and Sunil T. Ramaprasad, M.D., and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE