# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 22, 2024 Session

## IN RE GUARDIANSHIP OF BEATRICE ROSE MALONE

**Appeal from the Probate Court for Davidson County**
**No. 17P1523      Amanda Jane McClendon, Judge**

---

## No. M2023-01353-COA-R3-CV

---

Katherine Malone died in an accident in Idaho. Her ex-husband, Patrick Malone, was named guardian of their child, Beatrice Rose Malone ("Rosie"). A trust ("the Tennessee Trust") was established in Davidson County, Tennessee, for all funds due to Rosie. Katherine Malone's parents, James William Rose and Jennie Adams Rose ("the Roses") were the personal representatives of her estate and "Limited Trust Protectors," of the Tennessee Trust. Mr. Malone, as Rosie's guardian, filed a wrongful death lawsuit in Idaho and recovered a settlement. The settlement funds were placed in a trust Mr. Malone established in Missouri with Blue Ridge Bank and Trust. The Roses filed this action to transfer the funds to the Tennessee Trust and to find Mr. Malone in civil contempt. The Probate Court agreed with the Roses, finding Mr. Malone in civil contempt and ordering that the funds be transferred to the Tennessee Trust. Mr. Malone and Blue Ridge Bank and Trust appealed. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., joined. W. NEAL MCBRAYER, J., filed a separate dissenting opinion.

Christopher E. Thorsen and Austin Keith Purvis, Nashville, Tennessee, for the appellants, Patrick M. Malone and Blue Ridge Bank and Trust Company.

Jeffrey John Switzer and John M. McDonald, Nashville, Tennessee, for the appellees, James William Rose and Jennie Adams Rose.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Katherine Malone died in an unfortunate accident in Idaho on August 3, 2017. A logging truck owned by Kevin Flory Trucking overturned and spilled its load as she was jogging by. She had one daughter, Rosie. Rosie's father is Patrick Malone ("Mr. Malone"), Katherine Malone's ex-husband. All resided in Nashville, Tennessee.

On September 14, 2017, the Seventh Circuit Court for Davidson County, Tennessee ("Probate Court")[1] granted Mr. Malone's petition for guardianship,[2] naming him as the legal guardian of Rosie's real and personal property. Rosie, as her mother's heir, would inherit Katherine Malone's house and its contents, and was expected to inherit or receive life insurance proceeds, social security benefits, and other assets.

On March 15, 2018, after a hearing to review the income/expense statement and the property management plan, the probate master issued an order that required "that the guardian, Patrick Malone, shall immediately notify the court should he receive any asset of the guardianship estate in excess of $15,000 and be placed on the first available docket of the probate master to review the issue of bond."

On June 7, 2018, Mr. Malone petitioned the Probate Court to allow him to set up a trust for Rosie. The trust was negotiated by Mr. Malone and his attorneys, and the Roses[3] and their attorneys. The trust would receive all guardianship funds and proceeds from a Dearborn Life Insurance policy. In addition, paragraph 6 of Mr. Malone's petition stated:

> The child will also receive certain funds from several retirement accounts, Fidelity and GE pension, and a distribution from the Estate of Katherine Malone when it is settled, and the proceeds from the sale of the home of Katherine Malone which vested in the child at death. It is anticipated the total funds to be received will be in excess of $500,000.00. *The child may also receive a substantial settlement or judgment from a wrongful death lawsuit as a result of her mother's accidental death.*

---

[1] At some point, the case was transferred to the Second Circuit Court for Davidson County, Tennessee, Probate Division. For the sake of simplicity, we will use Probate Court throughout this opinion when referring to the trial court.

[2] Mr. Malone had already been named Rosie's legal custodian.

[3] The Roses are the parents of Katherine Malone. They were appointed the personal representatives of the Estate of Katherine Malone.

(Emphasis added). All funds would be professionally managed and invested. Mr. Malone and Pinnacle Bank would be co-trustees.

The Roses answered Mr. Malone's petition. They agreed that a trust was appropriate, but they thought Pinnacle Bank should be the sole trustee. They also sought designation as trust protectors "for the purposes of having access to accountings and financial statements concerning the trust."

Mr. Malone replied to the Roses' answer. He labeled them "obstructionists" and alleged that they possessed "ill will toward the guardian at every hearing." Mr. Malone opposed the Roses involvement "with the trust in any way."

On July 19, 2018, the Probate Court granted Mr. Malone's request to establish a trust known as the Beatrice Rose Malone Irrevocable Trust, finding that it was "in the manifest best interest of the child." Mr. Malone and Pinnacle Bank were appointed co-trustees, with Raymond James appointed as investment advisor. The Roses were named "Limited Trust Protectors," with,

> the limited rights of (1) receiving monthly trust statements, (2) receiving trust tax returns, (3) having the right to inspect the trust records relating to disbursement of principal or income, (4) ability to call any matter concerning the trust disbursements to the Court's attention, but no further or other rights with respect to the trust.

The trust was to remain court supervised, with the co-trustees filing an annual status report.

While the Probate Court order identified several sources of funds that must be placed in the trust, Mr. Malone points out that the order did not mention any funds from a wrongful death action or contain a catch-all provision. Of course, no wrongful death action had yet been filed. The trust instrument, attached to the Probate Court order as Exhibit 1, contained the following language that the Roses emphasize: "additional amounts shall be contributed to the Trust as may become available to Rosie." Furthermore, the trust states that, "This Trust is created by operation of law as it is implemented by the Court, and shall be a court supervised trust until Rosie attains the age of eighteen (18) years of age ("Majority Age"), under the Guardianship Case No.17P1523."

Before the creation of the trust and afterward, Mr. Malone asked the Probate Court for three payments of attorney's fees from Rosie's funds, in part for research by Tennessee attorneys regarding filing an Idaho wrongful death action. The Probate Court approved a portion of these fee requests by order of April 5, 2019. By this time, Mr. Malone had filed a wrongful death case in Idaho.

In the annual status report filed by Mr. Malone on May 20, 2019, Mr. Malone mentioned that he had filed a wrongful death suit in Idaho and criticized the Roses for interference.[4] He concluded the report by stating: "The Guardian submits that any wrongful death claim damages recovered from the pending lawsuit filed on behalf of Rosie as sole heir will be deposited to Rosie's Trust established by the Court at Pinnacle Bank."

On October 23, 2019, Mr. Malone filed a Verified Petition for Minor's Compromise in the Idaho wrongful death case. The petition contains a three-sentence paragraph about the Tennessee Trust and the following frank statement:

> A significant amount of animosity and distrust exists between Patrick and the Roses. That animosity ultimately led to the Roses seeking appointment as "trust guardians" over the Trust. It also led to the Roses incorrectly seeking to pursue R.M.'s wrongful death claim [] as an asset of Katherine's estate. For this reason, Patrick will be seeking to establish a separate trust in which to place the proceeds of this settlement.

Mr. Malone also claimed, in his response to interrogatories in this litigation, that the Tennessee Trust "is more restrictive than advisable on the use of trust proceeds for the benefit of Rosie during the life of the Trust." Mr. Malone created a trust ("the Missouri Trust") in Missouri,[5] where he and Rosie had moved. He served as a co-trustee along with Blue Ridge Bank and Trust Company.

The Idaho court approved the wrongful death settlement in an order entered on November 6, 2019. Out of the $1,000,000.00 settlement amount, the court approved $250,532.58 in attorney fees and costs. The court ordered that "the remaining balance of $749,467.42 shall be paid to the Beatrice Rose Malone Irrevocable Trust for deposit into an irrevocable trust for the benefit of R.M." Mr. Malone deposited the money into the Missouri Trust.

On January 24, 2020, after learning of the settlement and the Missouri Trust, the Probate Court issued a temporary restraining order restraining and enjoining Mr. Malone "from spending any money from the Missouri Trust or the funds received pursuant to the Idaho Court settlement."

The Roses filed an amended complaint for Declaratory Judgment, Injunctive Relief, and Damages on January 16, 2020. They sought to have the proceeds of the wrongful death settlement transferred to the Tennessee trust and to have Mr. Malone found in civil

---

[4] The Roses, as the co-executors of the Estate of Katherine Malone, had had contact with the insurance carrier of the trucking company involved in her accident.

[5] While Mr. Malone informed the court about his intent to create the Missouri Trust, it was not actually established until November 12, 2019.

contempt for violating the Probate Court's July 19, 2018, order. The Roses, Mr. Malone and Blue Ridge Bank and Trust filed motions for summary judgment. The trial court granted summary judgment to the Roses, finding Mr. Malone in contempt of court. The funds in the Missouri Trust were ordered to be transferred into the Tennessee Trust. Mr. Malone and Blue Ridge Bank and Trust appeal.

STANDARD OF REVIEW

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). "[I]f the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence that, if uncontroverted at trial, would entitle it to a directed verdict." *TWB Architects, Inc, v. Braxton*, LLC, 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting) (citations omitted)). The burden then shifts to the nonmoving party to produce evidence showing that there is a genuine issue of fact for trial. *Id.* In this case, the parties have agreed upon the facts.

ANALYSIS

*Civil Contempt*

As the proponents of the summary judgment motion, the Roses have the burden of proving Mr. Malone was in civil contempt. Civil contempt consists of four elements:

> First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the court order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008) (footnotes omitted); *see also* Tenn. Code Ann. § 29-9-102(3). Mr. Malone, the party without the burden of proof, sought to demonstrate that the facts did not satisfy the four requirements of *Konvalinka*.

The first element concerns whether the order was lawful. It seems that the Probate Court's finding of civil contempt involved two orders – the Probate Court wrote explicitly of the violations of its "orders." No one argues that the Probate Court order of July 19, 2018 was not lawful. The earlier order of March 15, 2018 was mentioned by the Probate Court in the context of a bond and required the Guardian to notify the Court and place the matter on the first available docket if other assets exceeding $15,000 were received. The July 19, 2018 order waived the bond, superseding the March 15, 2018 order. The July 19, 2018 order was still in effect at the time of the alleged contemptuous actions. The March 15, 2018 order, however, was not in effect at the time of the alleged contemptuous actions. The first element of civil contempt, a lawful order, is met by the July order. The March order does not satisfy this element because it was no longer valid.

The second element, that the order alleged to have been violated must be clear, specific and unambiguous, is hotly contested. "A person may not be held in civil contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden." *Konvalinka*, 249 S.W.3d at 355. Mr. Malone views the Probate Court's order narrowly, as not including the attached trust document and maintains that the order does not "expressly and precisely" prohibit him from creating the Missouri Trust. "Nor did the Probate Court's Order," according to Mr. Malone, "expressly and precisely require that any-and-all proceeds received for the benefit of Rosie Malone from any and all [sic] sources must be placed into the Tennessee Trust." He argues that the Probate Court knew of the potential wrongful death recovery, but did not list that along with other funds that must be deposited in the Tennessee Trust.

The Roses take a broader view, arguing that the "circumstances surrounding the issuance of the order, including the audience to whom the order is addressed," should be considered. *Id*. at 356. Thus, they believe that the trust must also be considered. A party may be found in contempt of "any lawful writ, process, order, rule, decree, or command of such courts." Tenn. Code Ann. § 29-9-102(3). The question then is whether the trust was part of the court's order or part of a command of the court such that Mr. Malone could be found in contempt for violating a provision of the trust.

The Probate Court retained supervision of the trust. A court supervised trust is not the norm and denotes the court's interest in continuing oversight and enforcement of the

trust provisions.[6] Retaining supervision of the trust does, in a very real and practical sense, incorporate the trust into the court's order. Supplementing the court's supervision is the appointment of the Roses as Limited Trust Protectors. They serve as the eyes and ears of the court concerning trust disbursements.

The terms of the trust provide clear, specific, and unambiguous direction as to what funds were to be deposited into the trust. Article II, Section A states:

> The trust shall be initially funded with the assets as set forth in Exhibit A attached hereto and made a part hereof by reference thereto. *Further and additional amounts shall be contributed to the Trust as may become available to Rosie.* This Trust is created by operation of law as it is implemented by the Court, and shall be a court supervised trust until Rosie attains the age of eighteen (18) years of age ("Majority Age"), under the Guardianship Case No. 17P1523.

(Emphasis added). "Shall" is ordinarily construed as mandatory. *Stubbs v. State*, 393 S.W.2d 150, 154 (Tenn. 1965). "The word 'shall' is equivalent to the word 'must.'" *Bateman v. Smith*, 194 S.W. 2d 336, 336 (Tenn. 1946) (citing *Home Tel. Co. v. Nashville*, 101 S.W. 770, 773 (Tenn. 1907)). This language leaves no doubt that any money to which Rosie became entitled must be placed in the trust. The "implemented by the Court" language further emphasized the order or command nature of the trust instrument and the Court's involvement in enforcement.

Was the Probate Court's order disobeyed? Absolutely. The funds available to Rosie were required to be placed in the Tennessee Trust.[7] Instead, Mr. Malone placed the funds into the Missouri Trust.

Willfulness in the civil contempt context does not require the same standard of culpability that is required in the criminal context. *Konvalinka*, 249 S.W.3d at 357. Willful conduct in civil contempt

---

[6] "Supervision" is "[t]he act of managing, directing, or overseeing persons or projects." BLACK'S LAW DICTIONARY 1479 (8th ed. 2004).

[7] The Roses also argue that, because the only trust existing for Rosie at the time of the Idaho court's November 2, 2019, order was the Tennessee Trust, the Missouri Trust having been created on November 12, 2019, the Idaho judge must have intended the wrongful death proceeds to go to the Tennessee Trust. We disagree with this interpretation of the Idaho court's order. Nothing in the record indicates that the Idaho judge knew the name of the Tennessee Trust, but she wrote that the funds should be paid to "the Beatrice Rose Malone Irrevocable Trust." The Idaho court knew this was the name of the Missouri Trust because the Missouri Trust instrument had been attached to the affidavit of attorney Michael Howard.

consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

*Id*. (quoting *State ex rel Flowers v. Tenn. Trucking Ass'n Self Ins. Grp Trust*, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006) (citations omitted)).

Mr. Malone knew what he was doing. He negotiated and signed the Tennessee Trust document. In his 2019 annual status report, Mr. Malone stated that, "The Guardian submits that any wrongful death claim damages recovered from the pending lawsuit filed on behalf of Rosie as sole heir will be deposited to Rosie's Trust established by the Court at Pinnacle Bank." Two months later, on July 11, 2019, Mr. Malone filed an Amended Property Management Plan. It mentioned the wrongful death claim lawsuit, but noted that, "[n]o funds have been received by the guardian as the case has not yet gone to trial or been settled." Approximately three and one-half months later, Mr. Malone filed the settlement petition in the Idaho case that proposed the Missouri Trust.

We affirm the Probate Court's determination that Mr. Malone was in civil contempt of the Probate Court's July 19, 2018, order.

*Full Faith and Credit*

Mr. Malone claims that the Probate Court's order violates the Full Faith and Credit Clause of the United States Constitution. The Full Faith and Credit Clause provides, in pertinent part: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. As we see it, however, this is not a case in which the Full Faith and Credit Clause is at issue. No one is challenging the appropriateness of the Idaho forum or the validity of the Idaho court's decision. This situation is more analogous to a creditor seeking funds from a debtor's bank account. Thus, we affirm the Probate Court's order to transfer the wrongful death funds from the Missouri Trust to the Tennessee Trust.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellants, Mr. Patrick Malone and Blue Ridge Bank and Trust Company, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE